## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| **DYLAN JOSEPH YOUNG,** | § | |
| **INDIVIDUALLY AND ON BEHALF OF** | § | |
| **PERSONS SIMILARLY SITUATED,** | § | |
| | § | |
| **PLAINTIFF,** | § | **COLLECTIVE ACTION** |
| | § | |
| **v.** | § | |
| | § | **CASE NO. 4:13-CV-00035-JMM** |
| **THE TRADITIONAL BAKERY, INC.** | § | |
| **and OKLAHOMA CITY BAKERY INC.,** | § | |
| | § | |
| | § | |
| **DEFENDANTS.** | § | |

## UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT OF COLLECTIVE ACTION AND AUTHORIZING NOTICE OF SETTLEMENT

On January 22, 2013, Plaintiff Dylan Joseph Young ("Plaintiff" or "Named Plaintiff"), on behalf of himself and others similarly situated to him employed as Managers in Training ("MITs") in any Panera franchise bakery-café location owned by Defendants The Traditional Bakery, Inc. and Oklahoma City Bakery Inc. ("Traditional Bakery") during the period from March 20, 2009 through April 3, 2012 ("Relevant Time Period" and "Potential Opt-in Plaintiffs"), filed the above-captioned collective action against Defendants (collectively, "parties") to seek unpaid overtime compensation and other relief under the Fair Labor Standards Act, 29 U.S.C. sections 201-219 ("FLSA").[1]

---

[1] Traditional Bakery and Young entered into a Tolling Agreement on May 1, 2012, suspending the running of the statute of limitations on claims under the FLSA and Arkansas wage and hour law from March 20, 2009 until termination of the Tolling Agreement.

The parties have entered into a Settlement Agreement ("Settlement") pursuant to which Traditional Bakery will establish a common fund for which Plaintiff and Potential Opt-in Plaintiffs may file claims in exchange for their release of wage claims and dismissal of this case with prejudice.  The proposed Settlement confers substantial benefits upon the Plaintiff and would do so for each Potential Opt-In Plaintiff because the recovery it affords is equivalent to an award in their favor on all aspects of their potential claims.  The parties have agreed that the proposed Settlement represents a fair, adequate and reasonable compromise of the claims at issue in light of the existence of disputed issues of fact and of law with respect to liability, uncertainty as to whether the Plaintiff would be deemed similarly situated to the Potential Opt-in Plaintiffs, whether Plaintiff and Opt-in Plaintiffs would obtain a judgment in their favor, the expense of continued litigation, and the risks of possible appeals. Plaintiff hereby moves the Court for an order approving the terms reflected in this Settlement, authorizing the notice proposed by the parties to Potential Opt-in Plaintiffs of their opportunity to voluntarily participate in the Settlement, dismissing this case, and retaining jurisdiction to enforce the terms of the Settlement. *See,* Settlement Agreement, Notice, Consent to Join Form and Share Forms, filed as exhibits to the Declaration in Support of Unopposed Motion for Approval of Settlement of Marguerite M. Longoria (hereinafter "Longoria Decl."), filed contemporaneously herewith.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Doing business as Panera Bread, Traditional Bakery operates 30 or more cafes in Arkansas, Missouri, and Oklahoma. *See,* Complaint, Dkt. 1, ¶ 2. To prepare new hires to assume their duties in management positions, Traditional Bakery adopted and implemented

2

company-wide, an assistant manager in training ("MIT") program. *See,* Longoria Decl., ¶ 8. Plaintiff was hired by Traditional Bakery on March 23, 2010 as an assistant manager and began the MIT program in a Panera bakery-café in Fayetteville, Arkansas. *See,* Dkt. 1, ¶ 4. Plaintiff alleges that until April 3, 2012, Traditional Bakery uniformly misclassified MITs as exempt from the overtime compensation requirements of the FLSA . *See,* Dkt. 1, ¶ 15 .

In December 2011, the undersigned Plaintiff's Counsel began an investigation on behalf of Plaintiff with respect to Traditional Bakery's alleged failure to pay overtime compensation to MITs for hours worked in excess of forty (40) per week.  Longoria Decl., ¶ 9.  On March 20, 2012, undersigned Counsel for the Plaintiff wrote a letter to Traditional Bakery describing the Plaintiff's claim, and notifying Traditional Bakery of Plaintiff's intention to file an action in Federal Court to seek unpaid overtime wages for hours worked in excess of forty during his training to be an Assistant Manager on behalf himself and others similarly situated to him in a collective action under Section 216(b) of the FLSA.[2]  *See, id.,* ¶ 10.  In exchange for Plaintiff's forbearance from immediately filing a complaint, Plaintiff invited Traditional Bakery to toll the statute of limitations on the claims described therein and  engage in a settlement-privileged pre-suit exchange of discovery preliminary to meeting to try to resolve the claims.  *See, id.,* ¶ 11.

Traditional Bakery agreed, whereupon the Parties negotiated and entered into a Tolling Agreement on May 1, 2012, suspending the limitations period on claims under the

---

[2] Under the FLSA, non-exempt workers denied overtime are ordinarily eligible to recover two years of unpaid overtime pay plus an equal amount as statutory liquidated damages.  29 U.S.C. § 255(a).  Proof that a violation was willful gives rise to a third year of liability, extending the statute of limitations to three years.  *Id.*  The FLSA also provides for the recovery of attorneys' fees, expenses and costs.

FLSA for all MITs employed from March 20, 2009 until the termination of the Agreement. *See, id.,* ¶ 12. After accomplishing this, the Parties negotiated and entered into a settlement-privileged, confidential information exchange agreement enabling Plaintiff and his Counsel the opportunity to discover information and data to fully assess the claims and defenses and calculate potential damages owed to Plaintiff and all Potential Opt-In Plaintiffs. *See, id.,* ¶ 13.

Pursuant to the information exchange agreement, Plaintiff's Counsel provided Counsel for Traditional Bakery with a detailed description Young's claim as a representative claimant, supported by relevant documents. *See, id.,* ¶ 14. And, as provided in the Agreement, Traditional Bakery produced for inspection Representative Claimant's personnel file; all compensation and time reporting policies and other relevant directives from Traditional Bakery effective with respect to MITs from March 20, 2009 through April 3, 2012; records reflecting all compensation paid to Representative Claimant on a weekly basis by Traditional Bakery during his training; all time-keeping records that referred to Representative Claimant during his training time period; the schedules reflecting hours worked by Representative Claimant during training; the start and end dates for participation in the MIT program and payroll data for all MITs employed during the period from March 20, 2009 through April 3, 2012 within the State of Arizona, Arkansas, Missouri and Oklahoma, who did not receive overtime pay for all hours worked during training. *See, id.*

During the ensuing weeks, Counsel for the Parties examined the documents and data and engaged in several telephone calls to clarify aspects of the information produced. *See, id.,* ¶ 15. In addition, Counsel for Plaintiffs persuaded Traditional Bakery to produce, for the

purpose of determining the uncompensated time worked by MITs, sample timekeeping records for currently employed non-exempt shift supervisors who had participated in the MIT program concurrently with the MITs  who had been hired as Assistant Managers.  *See, id.,* ¶ 16.  Finally, Traditional Bakery produced payroll data and policies supporting its representation that it reclassified the MITs for compensation purposes as non-exempt employees effective April 3, 2012, thereafter recording and compensating them with overtime premiums for hours worked in excess of 40 per week.  *See, id.,* ¶ 17.  With the aid of a data analyst, Plaintiff's Counsel produced a comprehensive damages analysis for Plaintiff and the Potential Opt-in Plaintiffs based upon Young's representations and close examination by Plaintiff's Counsel of the daily training schedules, data produced as a result of entries in Traditional Bakery's electronic time-keeping system by hourly shift supervisors who participated in MIT training,  and payroll records.  *See, id.,* ¶ 18.

In August, 2012, Plaintiff's Counsel sent Traditional Bakery a legal brief  providing a comprehensive analysis of the information and a damages model assessing damages for  all the participants in the MIT program during the relevant period.  *See, id.,* ¶ 19.  After engaging in several conference calls discussing the claims and defenses and negotiating a possible resolution, the Parties reached agreement on the essential terms of settlement on October 22, 2012. *See, id.,* ¶ 20.

During the ensuing weeks, Plaintiff's Counsel drafted documents to memorialize all terms of the settlement, as well as the proposed notice and claim forms.  The proposed Settlement Agreement was executed on December 17, 2012.  *See, id., ¶* 21.

## SETTLEMENT TERMS

5

The parties' Settlement Agreement provides that Traditional Bakery did not admit any violation of law or any liability whatsoever to Plaintiff and/or to anyone alleged to be similarly situated to Plaintiff, individually or collectively, all such liability having been expressly denied.  Nevertheless, pursuant to the Settlement Agreement, to avoid the anticipated time and expense of protracted litigation and to resolve and settle with Plaintiff and the collective, Traditional Bakery agreed to pay a total of Two Hundred and Forty Thousand Dollars into a common fund settlement that will be used to compensate MITs company-wide who were employed by Traditional Bakery during the relevant period as identified on Exhibit A to the Settlement Agreement.  The parties agreed that Plaintiff and similarly-situated MITs should receive notice of an opportunity to receive a share of the settlement fund allocated to back pay, based upon an estimate of their alleged overtime compensation damages and their dates of participation in the MIT program during the relevant period,  and an equal amount in liquidated damages, conditional upon their timely filing of consent to join forms signifying their desire to participate in the Settlement and waiving all claims for unpaid wages.  *See,* Longoria Decl., ¶¶ 22,23 and Exhibit 3.

In addition, the Parties agreed that the  Plaintiff,  who initiated this action should be entitled to receive a service incentive of $2,500 in recognition of his significant efforts bringing the litigation on behalf of himself and others similarly situated, working with Counsel in the investigation preliminary to the commencement of this litigation, assisting with discovery of the claims and defenses, as well as in evaluating settlement offers.  *See, id.,* ¶ 24.

The settlement provides compensation to Plaintiff and Potential Opt-in Plaintiffs for

their attorneys' fees and costs by entitling Plaintiff's Counsel to 33 and 1/3 percent of the common fund for attorneys' fees and litigation expenses incurred in representing the Plaintiff and Potential Opt-In Plaintiffs, including fees and costs incurred in the administration of the settlement.[3] *See, id.,* ¶ 25.

Finally, under the terms of the Settlement Agreement, Traditional Bakery agreed to pay, in addition to the gross settlement amount, the amount of the employer's share of FICA and FUTA, and any other state-specific requirements on the settlement payments designated as back wages. *See, id.,* ¶ 23.

## MEMORANDUM OF LAW

### I. The Court Should Certify This Case As a Collective Action Pursuant to Section 216(b) of the FLSA

Pursuant to the Settlement Agreement, the Parties have agreed, for settlement purposes, that this case should be certified as a collective action pursuant to Section 216(b) of the FLSA. Accordingly, Plaintiff's Counsel requests that the Court grant certification of the FLSA claims at issue and provide an opportunity for all MITs employed within the relevant period to opt into this case pursuant to Section 216(b) of the FLSA. Pursuant to the collective action provisions of the FLSA, court-authorized notice to employees "similarly situated" to the plaintiff(s) "serve[s] the interests of judicial economy" and "aid[s] in the vindication of plaintiffs' rights" to recover damages for violations of its overtime. *See, Ford*

_____

[3] To facilitate the settlement, Plaintiff's counsel will be called upon to provide legal advice to all Potential Opt-In Plaintiffs and perform the responsibilities typically handled by a third-party claims administrator, which include preparing and mailing the notice and claim form, conducting searches to find Potential Opt-In Plaintiffs whose notices are returned as undeliverable, processing the claim forms, sending letters to Potential Opt In Plaintiffs who submit but fail to properly execute the claim form, and mailing the settlement checks. *See,* Longoria Decl. ¶ 33.

*et al. v. Townsends, Inc.,* 2010 U.S. Dist. LEXIS 46093, ** 7-8 (E.D. Ark., April 9, 2010)

*quoting Helmert v. Butterball,* 2009 U.S. Dist. LEXIS 116460 * 8 (E.D.Ark. Dec. 15, 2009);

29 U.S.C. § 216(b) (2006).  Unlike a Rule 23 class action, a collective action under the FLSA

is pursued on an opt-in basis requiring employees to provide their consent in writing to join

the action.  *Id.;* 29 U.S.C. § 216(b).

A collective is deemed similarly situated for notice purposes after a plaintiff makes a

modest factual showing that the proposed members of the collective were victims, as here, of

a "single decision, policy, or plan."  *See, id. at *8.*  The proposed collective action readily

meets this standard because Plaintiff and the other MITs employed during the relevant period

were all subject to the same misclassification decision and compensation policies and they all

participated in the same management training program necessitating the regular performance

of work in excess of 40 hours per week.  *See,* Longoria Decl., ¶ 25.  Moreover, Traditional

Bakery has consented to certification for settlement purposes. *Id.*

## II.     The Court Should Approve the Parties' Settlement Because It Represents a Fair and Reasonable Compromise of Disputed Claims

### A.     The Settlement Meets the Requirements Set Forth in *Lynn's Food Stores, Inc.* and the "Fairness" Factors Applicable to Rule 23 Actions

Parties settling claims for unpaid wages under the FLSA may seek judicial approval

of a proposed settlement to ensure fairness.[4]  *See, Brown v. L & P Indus.,* 2005 U.S. Dist.

---

[4] *Lynn's Food* does not require judicial scrutiny of the settlements of FLSA claims such as the one proposed, in which plaintiffs have arguably received full relief in the form of compensation for unpaid wages, liquidated damages and attorneys' fees. *See, Lynn's Food*, 679 F.2d 1350, 1354-55 (11th Cir, 1982). However, since the parties have had to estimate the total hours worked per week by Plaintiff and Potential Opt-in Plaintiffs during the Relevant Period due to the absence of concurrent time records, the Plaintiff initiated the above-captioned collective action against Traditional Bakery in order to obtain approval from the Court as to the terms of this settlement and authorization to distribute the notice of settlement to the Potential Opt-in Plaintiffs. *See,*

LEXIS 39920 (E.D. Ark., Dec. 21, 2005) (observing that outside the scope of the FLSA, employers and employees may typically "resolve their own disputes and an agreement (the accord), followed by payment (the satisfaction), would bar a later lawsuit.") *quoting* Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986) and citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). *Lynn's Food,* instructs that the court's role is to ensure that the employer does not "overreach" and take advantage of employees in settling claims for wages and  a settlement should be approved if it reflects a "reasonable compromise over issues, such as coverage or computation of back wages, that are actually in dispute;" in order to promote the policy of encouraging settlement of litigation. *Lynn's Food*, 679 F.2d 1352-54.

There is a longstanding policy favoring settlements of civil actions, which is buttressed by the public interest favoring settlements, especially with respect to class action litigation.  *See, Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist*., 921 F.2d 1371, 1391 (8th Cir. 1990) (the policy in favor of settlement is so strong that such agreements are "presumptively valid") and *Stoneridge Inv. Partners LLC v. Charter Communs., Inc.,* 2005 U.S. Dist. LEXIS 14772, **14-15 (E.D. Mo. June 30, 2005) citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977). *See also, Lynn's Food Stores*, 679 F.2d at 1353.  "It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation." *Stoneridge,* citing *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 2004 U.S. Dist. LEXIS 23342, at *31 (W.D. Mo. Apr. 20,

---

Longoria Decl. ¶ 7, Exh. 3, p. 2.  Defendants' Answer denies liability for failure to pay overtime wages.  *See generally,* Dkt. 9.

2004) (citations omitted).

Upon scrutinizing this Settlement, this Court will find that it is worthy of approval. By this Agreement, the parties, represented by experienced counsel, negotiated a reasonable compromise of a *bona fide* dispute with respect to whether the employees at issue are entitled to overtime compensation under the FLSA and, if so, the amount of compensation due. *See,* Longoria Decl., ¶ 27. The notice procedures provided under Section 216(b) will permit Plaintiff and Potential Opt-in Plaintiffs to participate in the Settlement by filing a consent to join form, while providing that those who do not elect to do so will not be bound to the outcome of the case. And, since solely the MITs who approve the Settlement and choose to opt in will be bound by its terms, no final hearing is required to provide objectors, who would otherwise be bound by the Settlement's terms an opportunity to be heard. Instead, the approval may be sought on a single motion to enter a stipulated judgment. *See, e.g., Swisher v. MetLife Home Loans,* 2012 U.S. Dist. LEXIS 79428 (D. Minn. May 11, 2012) (recognizing that putative members of collective are neither required to join nor accept a settlement reached in FLSA collective action).

Although the bifurcated approval process required to ensure notice and an opportunity to opt-out or object is unnecessary in the settlement of a collective action under Section 216(b), the Court may apply the factors considered in the settlement of a class action under Rule 23 to ensure that the proposed settlement is fair, reasonable and adequate.[5] *See,*

---

[5] Settlements of collective actions under Section 216(b) of the FLSA are not required to meet the settlement approval factors applied in Rule 23 cases, because the approval of Rule 23 class actions is designed to protect absent class members from the resolution of their claims without their approval. Unlike Rule 23 settlements, the named plaintiff in a collective action does not represent absent class members: Collective action settlements

*e.g., DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995) *quoting Van Horn*

*v. Trickey*, 840 F.2d 604, 606-07 (8th Cir. 1988).  In assessing whether a class settlement is

fair, reasonable and adequate, courts in the Eighth Circuit consider four factors: (1) the merits

of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's

financial condition; (3) the complexity and expense of further litigation; and (4) the amount

of opposition to the settlement. *See, Van Horn*, 840 F.2d  at 607 and  *Wiles v. Southwestern*

*Bell Tel. Co*., 2011 U.S. Dist. LEXIS 64163, 6-7 (W.D. Mo. June 9, 2011).

As will be demonstrated herein, when assessed according to the Eighth Circuit's

guidelines, this Court will find that the Parties' settlement is fair, reasonable and adequate.

### 1.    The Possible Rewards of Continued Litigation Weighed Against the Benefits of Settlement.

The parties have agreed that the proposed settlement is preferable to continuing in

litigation.  Both parties will benefit from the certainty and immediacy of the terms of the

Settlement, *see, e.g., Wiles,* 2011 U.S. Dist. LEXIS 64163 *7 (recognizing immediate relief

as a benefit of settlement), and by avoiding the obstacles and risks entailed by proceeding

through discovery, dispositive motions, trial and appeal.  In further litigation, Plaintiff would

have to establish that all the MITs in the putative collective are similarly situated for notice

purposes, despite the fact that they worked in more than 30 different locations and during

different time periods and  under different managers.  Ultimately, Plaintiff would likely have

been required to defend a motion for decertification. Second, Plaintiff would have to prove

that the MITs were in fact not performing management duties during portions of MIT

---

under Section 216(b) are only binding on those potential opt-in plaintiffs who consent to join the action.

training such that they were properly exempt from eligibility for overtime wages throughout their MIT training. Plaintiff and Defendant would have to litigate the amount of the MITs unpaid overtime hours during the MIT training period, likely generating voluminous discovery and the need for expert analysis because of the absence of any timekeeping records.  In continued litigation, either party would risk an adverse order determining whether Traditional Bakery willfully violated the FLSA, and accordingly, whether its liability would encompass two years, or three years.  In the absence of the Tolling Agreement the Plaintiff negotiated on behalf of himself and the Potential Opt-in Plaintiffs, suspending the limitations period on claims from March 20, 2009, the limitations periods for members of the collective would run until after the Plaintiff successfully litigated a notice motion, and notice issued informing members of the collective of their right to opt into this litigation. And, since Traditional Bakery amended the MITs' compensation classification in April 2012, many claims would be wasted by the passage of time.  The settlement reflects the parties' informed negotiation as to these issues after a thorough investigation of the claims and defenses, but eliminates the attorneys' fees and expenses which would be incurred in litigating these issues further.  *See,* Longoria Decl., ¶ 27.

After attorneys' fees, costs, and a service payment are deducted from the gross settlement amount, the Plaintiff and each Potential Opt-In Plaintiff who joins the case will recover damages that exceed 15 hours of overtime compensation for each MIT training week plus an equal amount of liquidated damages.  The settlement amounts exceeds the number of hours the Plaintiff estimated he worked each week as an MIT and the hours identified in Traditional Bakery's MIT training schedule.  In the absence of time records, the exact

number of hours each MIT worked per week is not ascertainable, but Plaintiff successfully negotiated a successful outcome in that Plaintiff and Potential Opt-in Plaintiffs will each be entitled to receive damages for unpaid overtime hours in excess of that recorded by comparator MITs participating in the same program who began electronically recording their hours worked after the position was reclassified as non-exempt.  Continuing with the litigation would likely have resulted in no additional backpay recovery for the MITs beyond in the amount to which they are entitled under this Settlement.   Longoria Decl., ¶ 28.

In sum, members of the settlement collective faced factual and legal issues at trial that make the likelihood of success at trial uncertain.  The substantial recovery and avoidance of risk strongly supports settlement on the proposed terms at this stage of litigation.

## 2.     The Defendant's Financial Condition.

This factor is not relevant to evaluation of the proposed settlement because it was not driven by the Defendant's ability to pay, but upon the potential damages of the collective and the potential defenses to liability.

Based on the extensive examination of data and calculation of damages, Plaintiff's Counsel has found the settlement to be fair, adequate, and reasonable and recommends approval of the settlement.  *See, id.,* ¶ 29.

## 3.     The Complexity and Expense of Further Litigation.

"The very purpose of compromise is to avoid the delay and expense of . . . a trial." *DeBoer*, 64 F.3d at 1177 (citations omitted). As detailed *supra,* in further litigation, Plaintiff faced substantial expense and litigation hurdles, such as obtaining conditional certification, engaging in full discovery, litigating summary judgment motions as to misclassification,

13

proving up damages, and potentially defending a motion for decertification, and attempting to meet the burden to prove that Traditional Bakery willfully violated the FLSA.

A settlement does not need to resolve all issues in order to be deemed fair, reasonable and adequate, nor are the "parties to a class action required to incur immense expense before settling as a means to justify that settlement." *See, DeBoer*, 64 F.3d at 1178.  Because Traditional Bakery met Plaintiff's demand for uncompensated back pay for participation in the MIT program in full, including agreement to provide back pay for a three-year period and full liquidated damages, further litigation would solely increase attorneys' fees and expenses rather than increasing the potential recovery.   *See,* Longoria Decl., ¶ 28.

### 4.      The Substance and Amount of Opposition to the Settlement.

This factor is applicable to Rule 23 settlements, not collective action settlements under Section 216(b),  because only in a Rule 23 settlement will unknown class members be bound to the terms of settlement unless they affirmatively opt-out of its terms.  Here, Potential Opt-In Plaintiffs will only be bound by the settlement if they timely opt into the case by returning the consent to join form. *See, McInnis*, 2012 U.S. Dist. LEXIS 34835, **5-6.

### B.      Distribution Will Be Equitable

Distributions from the settlement fund will be equitable and based upon Traditional Bakery's compensation data with the same formula applied to the Named Plaintiff and all Potential Opt In Plaintiffs who timely file claims. *See* Longoria Decl., ¶ 31.  The Named Plaintiff and each Potential Opt-in Plaintiff who timely files a Consent to Join Form will receive a share of the settlement fund based on analysis of their dates of employment in the

MIT program and their regular rate of pay.  *Id.*

> **C.**     **The Named Plaintiff is Entitled to A Service Payment For Initiating and Achieving This Favorable Settlement**

The terms of the proposed Settlement provide for the Named Plaintiff to receive the benefit of a modest service payment.  *See* Longoria Decl., ¶ 24.  Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incur during the course of the class action litigation.[6]  Named Plaintiff's  entitlement to this payment is based upon his time and dedication participating in the investigation, discovery, and settlement process and is not unusual.  The sum of the proposed service payment is approximately one percent of the gross settlement fund and within the mid-range of shares to putative  members of the collective. *See,* Longoria Decl., ¶ 24.

> **D.**     **Plaintiff's Counsel Should Be Awarded One Third of the Common Fund for Attorneys' Fees, Costs and Expenses**

The Settlement Agreement provides that Plaintiff's Counsel is entitled to attorneys' fees and costs not exceeding thirty-three and one-third percent of the settlement fund.  In the Eighth Circuit, the "use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *Id.,* citing *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig*., 364 F. Supp. 2d 980, 991 (D. Minn. 2005)  and *Petrovic*, 200 F.3d at 1157.  In fact, in common fund cases such as this, the Eighth Circuit has held that awarding attorneys' fees based upon a percentage of the benefit is preferable to doing so

---

[6] *See also, Simmons v. Enter. Holdings, Inc.,* 2012 U.S. Dist. LEXIS 97463 (E.D. Mo. July 13, 2012 (approving payment of $6,000 in class representative incentive awards in FLSA case as reasonable and appropriate) (citations omitted); *Crocker v. KV Pharmaceutical Co*., No. 4:09-CV-198 (CEJ), at *8 (E.D. Mo. May 4, 2012) (approving incentive awards of $4,000 and $8,000) and *Wineland v. Casey's Gen. Stores, Inc*., 267 F.R.D. 669, 677-678 (S.D. Iowa 2009) (approving $10,000 incentive compensation to each of the named plaintiffs and $1,000 to each deponent where specifically negotiated in the settlement package).

under the lodestar method.[7]  *See, e.g., Wiles v. Southwestern Bill Telephone Co.,* 2011 U.S.

Dist. LEXIS 64163.  "An award of attorney fees is committed to the sound discretion of the

district court."  *See, e.g.,* *Yarrington v. Solvay Pharms., Inc.,* 697 F. Supp. 2d 1057, 1061-

1065 (D. Minn. 2010) citing *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999).

Courts in this Circuit have routinely awarded attorney fees ranging from 25% to 36% of a

common fund under the percentage-of-the-fund method.  *See, e.g.,* *Yarrington,* 697 F. Supp.

2d  at 1061-1065.[8]

Plaintiff's Counsel has extensive experience litigating FLSA collective actions.  *See*

Longoria Decl., ¶¶ 3-6 and accompanying exhibits.  Plaintiff's Counsel's experience also

includes investigating, litigating and resolving claims on behalf of other MITs  employed in

Panera cafes owned by Panera, LLC. This experience, expertise and reputation enabled it to

secure, for the benefit of Plaintiff and MITs company-wide 100% of the MITs alleged unpaid

---

[7] The Supreme Court has held that it is appropriate that the attorneys' fees be awarded on the entire maximum gross settlement fund even though amounts to be paid to settlement class members who do not file claims form will remain the sole and exclusive property of Defendant.  *See Boeing Co. v. Van Gemert, et al.,* 444 U.S. 472, 480-81 (1980).

[8] Also citing *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement fund as reasonable); *In re Xcel,* 364 F. Supp. 2d at 998 (collecting cases demonstrating that this district routinely approves fee awards of 33%); *EEOC v. Faribault Foods, Inc.,* Civ. No. 07-3976, 2008 U.S. Dist. LEXIS 29132, at *13 (D. Minn. Mar. 28, 2008)   (approving fee award of approximately 30% of the settlement fund); *Carlson,* 2006 U.S. Dist. LEXIS 67108, at *22 (approving a fee award of $5,325,000 representing 35.5% of the of the $15,000,000 settlement fund). *Yarrington,* 697 F. Supp. 2d at 1065. *See also, Ramsey v. Sprint Communs., Co.,* 2012 U.S. Dist. LEXIS 171145, 13-17 (D. Neb. Dec. 3, 2012) (approving award of 26% of the total settlement fund, calculated inclusive of fees, expenses and administrative costs and without regard to amount of the fund claimed, without conducting a lodestar crosscheck in light of the fact that the fee was unopposed, did not appear excessive, and was disclosed to the class in the notice) citing *Boeing Co. v. Van Gemert,* 444 U.S. 472, 480-81 (1980) and *Johnston v. Comerica Mortg. Corp.,* 83 F.3d 241, 246 (8th Cir. 1996) and *McInnis v. Ecolab Inc.,* 2012 U.S. Dist. LEXIS 34835, 5-6 (D. Minn. Feb. 17, 2012) (authorizing notice of opportunity to opt-in to FLSA settlement prior to conditional certification of FLSA collective establishing fund of $115,000 to be distributed as follows: $45,000 to representative plaintiff providing backpay damages and consideration for release of personal injury, ADEA and defamation claims as well as service incentive; $30,000 to be distributed *pro rata* to 263 potential opt-in claimants, and 35% of total fund or $40,000 to Plaintiff's counsel for fees and expenses).

overtime wages, 100% of their liquidated damages, and an additional amount for their attorneys' fees, costs and expenses, without the plaintiffs having to endure the burden, time and risk of litigation. *See* Longoria Decl., ¶ 32.

Moreover, in addition to developing and discovering the claims, drafting persuasive legal memoranda, and negotiating a settlement, Plaintiff's Counsel will benefit the collective by administering the notice and share distribution process[9] and will continue advising Potential Opt-in Plaintiffs as to the benefits and consequences of participating in the Settlement during the notice period. *See,* Longoria Decl., ¶ 33.

Plaintiff's Counsel accepted 100% of the risk of loss in this representation, vigorously pursuing claims on behalf of the entire collective of MITs company-wide employed during the Relevant Time Period, who had never received any overtime compensation premiums. *See, id.* ¶ 34. Although Plaintiff's Counsel accepted representation on a contingency fee basis, it incurred a substantial lodestar locating and interviewing numerous witnesses, drafting legal memoranda persuading Traditional Bakery that the claims of MITs in this case had merit and could be certified as a collective action under the FLSA, and assessing damages. *See, id.* In addition, Plaintiff's Counsel prepared a comprehensive damage model which was persuasive in establishing an estimate of the damages that could be recovered. *See, id.* It is appropriate that Plaintiff's Counsel be compensated for performing these services.

---

[9] It is not unusual for Plaintiff's Counsel to administer the notice and distribution process and be awarded compensation for doing so. *See, e.g., McInnis,* 2012 U.S. Dist. LEXIS 34835 *15; *Fearn v. Blazin' Beier Ranch, Inc.,* 2012 U.S. Dist. LEXIS 19934, 5-6 (D. Minn. Jan. 30, 2012).

By virtue of their reputation, expertise and experience in wage and hour collective actions, Plaintiff's Counsel efficiently resolved this case by giving the Defendant an opportunity to agree to toll the claims and consider a pre-litigation settlement, dependent upon the outcome of a settlement-privileged information and data exchange and legal briefing, rather than by filing litigation, and thereafter litigating all potentially disputed matters including discovery issues, entitlement to summary judgment and damages (which would have inevitably increased the fees of Plaintiff's Counsel and the costs of defense for Traditional Bakery). *See, id.* ¶ 32. As such, Plaintiff's Counsel further enhanced the benefits the members of the collective are entitled to receive. *See, id.* As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex and novel litigation." MCL 4th § 14.121. *See also, Norman v. The Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (observing that "from the beginning and throughout the case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model.").

All the foregoing considerations demonstrate that an award of one-third of the common fund for attorneys' fees, costs and expenses is reasonable and worthy of approval.

**E.      The Notice of Settlement and Consent to Join and Release Should be Approved**

To facilitate this settlement this Court should authorize the parties to mail notice of this Settlement to Plaintiff and Potential Opt-in Plaintiffs providing each of them the

18

opportunity to participate by opting into the settlement pursuant to Section 216(b).

*Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989); *Dybach v. State of Fla.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Signorelli, et al. v. UtiliQuest*, 2008 U.S. Dist. LEXIS 109357 (M.D. Fla. July 25, 2008). The parties have agreed that the proposed Notice of Settlement and Consent to Join and Release Form fairly and clearly inform Potential Opt-In Plaintiffs of the claims at issue; the allocation of the gross settlement fund with respect to their potential shares of back pay and liquidated damages; the release of claims required in exchange for participating in the recovery; the incentive payment to the named Plaintiff; the award to Plaintiff's Counsel; and their legal option to participate, or not, in the settlement of this litigation. *See* Longoria Decl., ¶ 34 and composite Exhibit 4.

## Conclusion

The settlement bears all the indicia of fairness warranting approval as set forth in *Lynn's Foods* because Plaintiff and Potential Opt-In Plaintiffs were represented by experienced counsel, who engaged in "serious, informed, arms-length negotiations" of "a *bona fide* dispute with respect to coverage [and] amounts due under the Act," resulting in a fair, and reasonable compromise of claims. *See Lynn's Foods,* 679 F.2d at 1353-54, n.8. Approval of this Settlement will ensure to "secure the just, speedy, and inexpensive determination" of this action. Fed.R.Civ.P. 1.

Accordingly, the Plaintiff urges this Court to enter the proposed Order certifying the case as a collective action, approving the terms of the proposed settlement and proposed distributions from the common fund which Traditional Bakery has agreed to establish on behalf of Plaintiff and the proposed collective , authorizing notice to workers similarly

situated to Plaintiff of their opportunity to participate in the benefits of settlement, dismissing

the case with prejudice and retaining jurisdiction to enforce the Settlement.  *See,* Longoria

Decl., ¶ 35, Exhibit 5.


Dated:  February 27, 2013                     Respectfully submitted,


                                              /s Sam J. Smith_____
                                              SAM J. SMITH
                                              Florida Bar Number 818593
                                              MARGUERITE M. LONGORIA
                                              Florida Bar Number 998915
                                              BURR & SMITH, LLP
                                              442 W. Kennedy Blvd., Suite 300
                                              Tampa, FL  33606-1495
                                              813-253-2010
                                              813-254-8391 (facsimile)
                                              mlongoria@burrandsmithlaw.com
                                              ssmith@burrandsmithlaw.com

                                              Gena Gregory
                                              Gregory & LaRue PLLC
                                              2800 Cantrell Road
                                              Suite 202
                                              Little Rock, AR 72202
                                              Telephone: 501.707.0466
                                              Facsimile: 501.707.0459
                                              Email:  ggregory@gregorylarue.com

                                              GREGG I. SHAVITZ
                                              Florida Bar Number 011398
                                              SHAVITZ LAW GROUP, P.A.
                                              1515 S. Federal Hwy., Suite 404
                                              Boca Raton, Florida   33432
                                              561-447-8888
                                              561- 447-8831 (facsimile)
                                              gshavitz@shavitzlaw.com

**Attorneys for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 27th day of February 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system , which shall send notification of such filing to all counsel of record.

/s/ Sam J. Smith
Sam J. Smith